UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL PETERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 1:16-cv-2439 |
| | ) |
| EMERALD DATA NETWORKS, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DAMAGES

1. Plaintiff Michael Peters ("Peters"), by counsel, brings this action against Defendant Emerald Data Networks, Inc. ("Defendant), alleging that Defendant violated his rights as secured by § 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.

## PARTIES

2. Peters has at all relevant times resided in the Southern District of Indiana.

3. Defendant is a Georgia corporation doing business in the Southern District of Indiana.

4. Peters is a "participant" within the meaning of 29 U.S.C. § 1002(7).

5. Defendant is an "employer" within the meaning of 29 U.S.C. § 1002(5).

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), as this Complaint raises claims under 29 U.S.C. § 1140.

7. Venue is proper in this Court because Peters's cause of action arose in Noblesville, Indiana, which is located in the Southern District of Indiana, Indianapolis Division.

## FACTUAL ALLEGATIONS

8. Defendant hired Peters on or around February 21, 2013, as a senior systems analyst.

9. When Defendant hired Peters, both parties understood that Peters would almost exclusively work almost remotely from his home in Noblesville, Indiana.

10. At all relevant times, Peters's work performance met Defendant's legitimate expectations.

11. Defendant administers an employee benefits plan, which includes health care coverage.

12. During his employment with Defendant, Peters used Defendant's health care coverage to help pay for health care services rendered in Indiana.

13. During the 2016 open enrollment period in March/April for Defendant's employee benefits plan, Peters elected to participate as he had done throughout his employment.

14. Defendant's benefit plan provides health insurance through Aetna.

15. Peters has a chronic condition, for which he has been receiving treatment from the same primary care physician for years.

16. After the close of the 2016 open enrollment period, Peters's primary care physician moved to a different practice, which was outside of Aetna's network.

17. In June 2016, Peters's wife left her full-time employment through which she received health care benefits for her and their daughter.

18. Peters inquired to Defendant's office manager about the additional cost of adding his wife and daughter to the health care coverage he received through Defendant's employee benefits plan, and Peters was referred to the plan administrator, Northwestern Mutual.

19. Peters learned that the additional cost would be prohibitively expensive.

20. Peters began looking for an individual health plan to cover his wife and daughter.

21. After several weeks and several discussions with Northwestern Mutual, Peters was informed that he qualified for a "continuity of care" exemption under Defendant's benefit plan, which would allow him to leave the plan prior to the end of the plan year in April 2017 because he (a) had a chronic condition, and (b) his primary care physician for that condition no longer accepted the insurance provided under the plan.

22. When Peters learned this, he intended to use this option to leave the plan early and purchase an individual insurance plan for he and his family, which would allow his entire family to receive coverage at a lower cost, and he would not have to pay for coverage that he could not use with his primary care physician.

23. Peters consulted with an insurance agent, Robert Brow ("Brow"), to find a plan that best met his families needs and to advise him in unenrolling from Defendant's health benefit plan.

24. In order to take advantage of that exemption, Peters needed to obtain consent from Defendant's President, Darrell Rodgers ("Rodgers")

25. Peters requested that Rodgers and Defendant's benefits administrator assist him in unenrolling from Defendant's health benefits plan early.

26. Rodgers initially assisted Peters in attempting to utilize the exemption.

27. In August 2016, as the expiration of Peters's wife's coverage (September 1) was approaching, Peters sought further assistance in unenrolling from Defendant's health benefits plan from Rodgers.

28. Peters had difficulty switching health coverage and exercising his rights under Defendant's benefits plan due to the complexity of the governing laws and regulations.

29. Because Peters was having such difficulty, Peters mentioned to Rodgers that he might consult an attorney to assist him in unenrolling from Defendant's health benefits plan under the continuity of care exemption.

30. Rodgers urged Peters not to consult with an attorney because he said it was unnecessary and he did not want to see Peters spend that money.

31. On August 22, 2016, Rodgers emailed Peters to inform him that he would not grant the exemption.

32. Peters responded to the email asking additional questions about why the exemption would not be granted, and copied Brow on the email.

33. During a subsequent telephone call, Rodgers inquired about who Peters had copied on his recent email, asked whether he was an attorney, and told Peters that he cannot copy "outside people" on "internal matters."

34. Peters responded that he had copied Robert Brow on the email, and that Brow was the insurance agent he was working with and who had participated in a recent conference call.

35. Rodgers snapped back and said, "Not what I asked you–is this person an attorney?"

36. Peters responded that he did not believe so, and that he certainly had not hired him as an attorney.

37. Rodgers continued to berate Peters about not talking about "internal matters" to people outside the corporation.

38. At some point during this conversation, Peters said that he felt it may be in his best interests to retain an attorney to help him navigate the rest of this dispute.

39. Rodgers then said, "That's it, you're fired."

40. Defendant terminated Peters in retaliation for exercising his rights under Defendant's employee benefits plan and/or to interfere with his attempt to attain rights under Defendant's employee benefits plan and/or ERISA.

41. Defendant violated Peters's rights as protected by 29 U.S.C. § 1140.

42. Peters has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Peters, respectfully requests that the Court find for him and order Defendant to:

1. Pay Peters back pay;

2. Reinstate Peters or pay front pay in lieu of reinstatement;

3. Pay Peters's attorney fees and costs incurred in this matter; and

4. Provide Peters any and all other remedies that this Court finds appropriate.

Respectfully submitted,

*s/ John H. Haskin*
John H. Haskin, Attorney No. 7576-49

*s/ Samuel M. Adams*
Samuel M. Adams, Attorney No. 24387-49

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana  46204
Telephone:    (317)955-9500
Facsimile:    (317)955-2570
Email:    jhaskin@jhaskinlaw.com
    sadams@jhaskinlaw.com